UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

MICHAEL WILLIAM SINE and
SHERRIE KAY SINE,

           Debtors.

Case No. J08-00152-DMD
Chapter 12

**Filed On
1/9/09**

**CONFIRMATION MEMORANDUM**

      Michael Sine is a commercial fisherman. He and his wife filed a chapter 12 petition on March 26, 2008, utilizing amendments made to the Bankruptcy Code under BAPCPA[1] which allow a family fisherman with regular income to be a chapter 12 debtor.[2] While this is the Sines' first chapter 12 petition, they are not new to the bankruptcy process. Michael Sine has filed six prior bankruptcies, running from 1987 through 2003.[3] Sherrie Sine was a joint debtor in Michael's 1996 and 2003 chapter 7 filings.

      In their 2003 bankruptcy case, the Sines entered into two reaffirmation agreements with the State of Alaska. One agreement covered a loan the State extended to

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005).

[2] 11 U.S.C. § 109(f).

[3] Mr. Sine's first four bankruptcy filings were in the Bankruptcy Court for the Western District of Washington: Case No. 87-06112, filed Aug. 7, 1987 (ch. 7); Case No. 89-05251, filed Jul. 19, 1989 (ch. 13); Case No. 91-01764, filed Mar. 11, 1991 (ch. 13); Case No. 91-08761, filed Nov. 27, 1991 (ch. 13). He subsequently filed two chapter 7 petitions in the Alaska Bankruptcy Court, Case No. 96-01118, filed on Nov. 29, 1996, and Case No. 03-00240, filed Mar. 13, 2003. The instant chapter 13 case is his seventh bankruptcy filing.

the Sines in 2000 in the principal sum of $192,500.00.[4] The State has filed a secured claim for $262,714.45 on that obligation.[5] The loan is secured by the fishing vessel *Northern Explorer* and some limited entry fishing permits. A May 3, 2007, marine survey gave the *Northern Explorer* an estimated market value of $365,000.00.[6] Trustee Larry Compton contends the true market value of a vessel is generally about one-half to one-third of the value reflected on a marine survey.

The Sines' second reaffirmation agreement with the State covered a loan extended in 1998 in the principal amount of $21,050.00. The loan was secured by a limited entry permit and electronic gear on two smaller vessels. The State has filed a secured claim for $6,863.75 on this second obligation.[7]

The Sines have no priority tax debt, but do have a third secured obligation, to creditor Anderes Oil, in the amount of $13,814.98. Anderes Oil also holds a security interest in the *Northern Explorer*. The secured debts have been placed into the following classes under the Sines' second amended chapter 12 plan: Class 1 - the State of Alaska for its larger loan secured by the *Northern Explorer*, Class 2 - the State of Alaska for the loan secured by the limited entry permit and electronic equipment, and Class 3 - Anderes Oil.

---

[4] Debtors' Ex. 2.

[5] *See* Proof of Claim No. 9, filed May 27, 2008.

[6] Debtors' Ex. 5.

[7] *See* Proof of Claim No. 8, filed May 27, 2008.

2

The second amended plan proposes to pay the Class 1 and 2 claims "outside of the plan." A "new balance" for the State's Class 1 claim is set at $202,581.65,[8] and the rate of interest on the obligation is reduced from 10.5% to 6.5% per annum. The "new balance" will be paid in full as follows: payments of $10,000.00 on April 30, 2009, $10,000.00 on August 31, 2009, and $20,000.00 on December 1, 2009. Thereafter, annual payments of $28,000.00 will be made from December 1, 2010, through December 1, 2018. The debtors will make a final balloon payment on December 1, 2019.

The State's smaller Class 2 claim is to be paid in full by no later than December 1, 2009. The Class 3 claim filed by Anderes Oil is to be paid "under the plan" with annual payments of $3,500.00 to the trustee, commencing August 1, 2009, until the claim has been paid in full.[9] Additionally, the debtors are to make a payment of $15,000.00 to the trustee on August 1, 2009, and thereafter make annual payments of $16,500.00 to the trustee from August 1, 2010 through August 1, 2013. The debtors have also committed any income tax refunds they are to receive over the life of the plan to the trustee. A final payment to the trustee is to be made on January 1, 2014, in such an amount as is necessary to pay all allowed general unsecured claims in full, with 6.5 % interest from the date the petition was filed.

---

[8] The debtors arrive at this sum by deducting the deferred interest amount of $60,132.80 from the total stated on the State's Claim No. 9. The deferred interest portion of the State's claim is to be paid in 2019 concurrently with the final payment on the "new balance," but without accrued interest.

[9] After deduction of the trustee's commission, Anderes Oil will receive $3,150.00 annually until its claim, including interest at the rate of 6.5% from the date of the filing of the petition, is satisfied.

3

11 U.S.C. § 1225 sets out several factors a bankruptcy court must consider in determining whether a chapter 12 plan should be confirmed. One of those factors is that the plan be "proposed in good faith and not by any means forbidden by law."[10] The Sines have proposed a full payment plan and their sincere intentions to perform under its terms are not in doubt. However, sincere intentions alone cannot carry a plan to confirmation. Another factor to be considered by the court when looking at plan confirmation is whether "the debtor will be able to make all payments under the plan and to comply with the plan."[11] In other words, a plan must be "feasible." Here, I find that this requirement is lacking.

The Sines' federal income tax returns for the years 2005, 2006 and 2007 show repeated losses from their fishing operations.[12] Their 2005 return shows gross income of $86,369.00 but an overall business loss of $18,322.00. In 2006, the Sines had gross income of $117,764.00 and an overall business loss of $12,228.00. The 2007 return shows an even greater business loss, $26,080.00, and gross income of $96,299.00. Arguably, depreciation and interest expense could be set off against their losses to show at least some cash flow available for debt service. Such an analysis would yield $15,218.00 for debt service in 2005, $34,562.00 for 2006, and $12,325.00 in 2007. However, the recovery of this income would essentially be a wash. The debtors didn't pay their unsecured creditors during their 2005

---

[10] 11 U.S.C. § 1225(a)(3) (2009).

[11] 11 U.S.C. § 1225(a)(6) (2009).

[12] *See* Debtors' Exs. 6, 7 and 8, respectively.

4

through 2007 seasons. A substantial portion of the $57,860.38 which they have scheduled in unsecured claims was likely incurred during that time period.[13] Paying such creditors would result in further losses and inhibit the debtors' ability to make the long term debt payments to the State of Alaska. The debtors' living expenses of $20,000.00 a year would further inhibit their ability to make payments on their secured claims.

The debtors' business has also operated at a loss post-petition. Their monthly income and expense reports for the period of March through November, 2008, show gross income of $110,941.10 and expenses of $107,108.72, leaving a net profit of just $3,832.38. But they owe $14,000.00 to post-petition unsecured creditors and have no means to pay these debts. Further, in the nine plus months since they filed their petition, the debtors have made no payments to the trustee, nor have they made any post-petition payments to the State of Alaska on its two secured claims.

Against this successive history of unprofitability, the debtors have offered rosy projections for 2009.[14] They predict annual income of $187,000.00, an increase of nearly 68% over 2008. The debtors also project a decline in their overall expenses, such that they would have $103,180.00 available for taxes and debt service. Their 2009 budget allocates payments of $49,000.00 to the State on its two secured claims and $18,500.00 to the trustee,

---

[13] The debtors' Schedule F is incomplete because it doesn't list when the unsecured claims were incurred. *See* Docket No. 17, filed Apr. 14, 2008.

[14] Debtors' Ex. 10.

5

as required under the second amended plan. A net surplus of $35,860.00 is projected for 2009.

A North Dakota court discussed the feasibility requirement of § 1225(a)(6) in detail. In *In re Foertsch*,[15] the court stated:

> The feasibility requirement of Chapter 12 emanates from § 1225(a)(6) of the Bankruptcy Code which provides that a court shall confirm a plan of reorganization if "the debtor will be able to make all payments under the plan [and] to comply with the plan." This "feasibility" standard is a test also found in both Chapter 11 and 13, and requires a court to scrutinize the debtor's plan payments in light of projected income and expenses in order to determine whether the debtor is likely to be able to make the payments in accordance with the plan provisions. The feasibility test "injects pragmatism into the confirmation process by prohibiting confirmation of overly optimistic reorganization plans clearly destined to fail and by not belaboring the inevitable demise of a hopelessly insolvent debtor."
>
> Feasibility is fundamentally a fact question since it necessarily depends upon a determination of the reasonable probability of payment. The feasibility requirement . . . does not require an "iron clad guarantee". . . . The determination of feasibility cannot, however, be made in an "evidentiary vacuum", but must be "firmly rooted in predictions based on objective fact." . . . The United States Supreme Court, in an early decision under Section 77B of the Bankruptcy Act recognized that "[h]owever honest in its efforts

---

[15] 167 B.R. 555 (Bankr. D.N.D. 1994).

6

> the debtor may be, and however sincere its motives, the . . . Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation."[16]

I feel that the debtors' projections for success in this chapter 12 proceeding are overly optimistic. Their plan and the accompanying projections are visionary and impractical schemes. The sums that must be paid under the second amended plan are substantial. In 2009 alone, the plan requires the Sines to pay $67,500.00 to creditors and the trustee. In the following years, the plan calls for payments of $28,000.00 annually on the State's primary secured claim until 2019, when the debtors will be required to pay the deferred interest due the State, $60,132.80. The plan also requires the debtors to pay the trustee $20,000.00 on August 1 of 2010, 2011, 2012 and 2013. Neither the State nor the trustee felt that the debtors had the ability to make these significant payments. I agree with their assessment. Historically, the debtors have not demonstrated an ability to generate the kind of income needed to make these payments. Nor has the evidence they have presented at the confirmation hearing persuaded me that their projections will come to fruition, even assuming that they do more tender work than fishing in the future. Michael Sine testified that he had done about 59 days worth of tender work this past year. But even though this work may be more profitable than fishing, his profit for 2008 has been negligible. Given the current downturn in the economy, I am not persuaded that the debtors' decision to perform more tender work in 2009 will generate $112,000 in income, as shown on their projected

---

[16] *Id.* at 565-66 (citations omitted).

budget. For the same reason, I feel that the debtors' contention that they can sell the *Northern Explorer*, if necessary, to pay the State's loan, is unrealistic. The plan simply is not feasible.

Because the debtors' second amended plan doesn't satisfy the requirements of 11 U.S.C. § 1225(a)(6), confirmation must be denied. An order will be entered consistent with this memorandum.

DATED: January 9, 2009.

                                                            BY THE COURT

                                                            /s/ Donald MacDonald IV
                                                            DONALD MacDONALD IV
                                                            United States Bankruptcy Judge

Serve:        D. Bundy, Esq.
                 M. E. Beardsley, Esq.
                 L. Compton, Trustee
                 U. S. Trustee

                 01/09/09